Matthias, J.
This case presents the question whether the city of Toledo may lawfully issue bonds against its general credit and payable oút of the funds to be raised by general taxation for the purpose of acquiring a transportation system to fur *126 nish transportation for the inhabitants of that municipality.
The small amount in which it is proposed to issue such bonds suggests that the proceeding by the municipal authorities and this suit were instituted for the purpose of submitting for the determination of this court the sole question whether under the constitution and laws of the state the city has authority to incur any indebtedness for the purpose stated, which may be paid by general taxation. The question we have for consideration is not one of propriety or policy of municipal ownership, but only of the power and authority of municipalities of the state with respect thereto. If they have the power, the question of policy is confided to the municipality alone.
It is conceded, as of course it must be, in view of the express provisions of Section 4, Article XVIII of the State Constitution, and of the power and authority clearly conferred, that any municipality of the state may acquire any public utility, the product or service of which is to be supplied to the municipality or its inhabitants. It is contended, however, that the power thus conferred directly upon the municipalities of the state is so limited and circumscribed that the credit of the municipality may not be used or pledged for the purpose of acquiring or constructing such public utility, and that the power conferred may be exercised and such utility acquired or constructed only by paying cash or exchanging property therejfor. It is urged that the municipality may not go into debt for such purpose to any extent whatever, by *127 the issuance of bonds, or otherwise, whereby it pledges the general credit of the city to the payment of the same or any part thereof.
In the view we take of the question thus presented it is unnecessary to consider the provisions of the charter of the city of Toledo respecting the issuance of bonds for the purpose here in question, for the reason that in our opinion the adoption of a charter is not prerequisite to the enjoyment of the power herein sought to be exercised, and therefore adds nothing whatever to the authority conferred upon the city by constitutional provision. Such authority is conferred upon and may be exercised by every municipality regardless of whether or not it has adopted a charter for its government under the provisions of Section 7, Article XVIII of the Constitution. The provisions conferring such power are clearly self-executing. This conclusion is warranted by reason of the broad and comprehensive terms of Section 4, Article XVIII, above referred to, for plenary power is thereby conferred upon each and every municipality of the state to deal with the subject, and, if authority to levy taxes and issue bonds is absolutely essential to the enjoyment of the power granted, such authority is a necessary incident and must have been included in the power conferred. It is a matter of common knowledge that such utilities could not be otherwise acquired or constructed.
Section 5, Article XVIII, defines the procedure and requires that municipalities shall act by ordinance, upon which a referendum vote may be had in the manner therein set forth. Section 6 makes *128 specific reference to “any transportation service” of a municipal public utility, whereby it is made clear that it was intended to include a transportation system within the general term “public utilities” which municipalities were' authorized under Section 4 to acquire and operate.
By Section 12 it is provided that “any municipality which acquires, constructs or extends any public utility and desires to raise money for such purposes may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law; provided that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such municipality but shall be secured only Upon the property and revenues of such public utility.”
The purpose to grant to the municipalities of the state full and complete power with reference to the acquirement, ownership and operation of public utilities was clearly manifested by the members of the constitutional convention in their discussion of the provisions in question as well as by the express language of the constitutional amendments then under consideration and subsequently adopted. The discussion of those provisions by the framers thereof discloses a purpose to confer upon any municipality desiring to acquire, construct or extend any public utility the power to raise money therefor by the issuance of bonds; and they made such power and authority subject only to such general limitations as the legislature of the state might impese under power expressly con *129 ferred upon it by other provisions, particularly Section 13, Article XVIII, which provides that laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes. It was further provided that mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law should not impose any liability upon the municipality, but should be secured only by the property and revenues of such public utility.
The phase of the matter which was the subject of discussion in the constitutional convention was not whether the municipality might issue bonds for such purpose, but only whether the liability of the city for its indebtedness or any part thereof incurred for that purpose should be restricted. The entire discussion was based upon the assumption that under these provisions “to the extent of the limitation of the general indebtedness provided by law, the city may issue its general bonds, and presumptively in every case the mortgage bonds would not be for the full value of the utility itself.”
As there suggested, the purpose of these constitutional amendments was to afford the municipalities of the state the opportunity, when they should choose to do so, to own and operate their public utilities, and to confer upon them expressly and directly full power and complete authority to accomplish that purpose, the only reservation being that they must recognize and respect the limitations of tax levies and indebtedness for local purposes prescribed by law. But this reservation does not authorize the legislature to annul or curtail the *130 powers expressly granted by the constitution. It may limit the levies of taxes and the extent'of bonded indebtedness for local purposes, but it may not, either by action or inaction, preclude the exercise of power expressly conferred by the constitution, or deny the use of its revenues from taxation or its general credit for any purpose authorized by constitutional provision or for any purpose within the powers of local self-government thereby conferred. It was not contemplated that any grant of power by the legislature was essential, nor that it should be permitted to deny or limit the purpose, but only prescribe the limitation of taxation and bonded indebtedness for all local purposes.
Section 3939, General Code — a portion of what is commonly known as the Longworth act — sets forth the objects and purposes for which, under the law, bonds could be issued by municipalities, and the same act fixes and prescribes a limitation upon the extent of bonded indebtedness which a municipality may incur and beyond which it may not go. These provisions were enacted and were in force long prior to the adoption of the constitutional amendments under consideration. The acquirement or construction of certain utilities was thereby authorized and included in the purposes for which bonds of the municipality, pledging its general credit, might be issued. The construction or acquirement of a transportation system was not included and hence was not authorized, but as we have seen, the constitutional convention sought to and did confer upon municipalities the broad power to acquire and operate public utilities, which would *131 include a system of transportation in a municipality, and any legislative action inconsistent with the full and free exercise of the power thus conferred is an unauthorized limitation upon the powers granted and must fall, simply because it is inconsistent therewith, as clearly pointed out in the case of Dravo-Doyle Co. v. Village of Orrville, 93 Ohio St., 236.
The limitation fixed and prescribed by that section, as to the amount of bonded indebtedness for all purposes, is not inconsistent with such constitutional provision, in fact it is expressly authorized thereby, and hence controlling. Cass v. Dillon, 2 Ohio St., 607, and State, ex rel. City of Toledo, v. Lynch, Auditor, 88 Ohio St., 71, 92.
It is not only presumed, but the debates of the constitutional convention disclose, that that body .did have in mind the course of legislation and existing statutes dealing with the subject in hand, and took into consideration the existing maximum legislative limitation of five per cent, of the tax duplicate for general bonds for all purposes, and determined, that, unless the same should be subsequently increased, credit beyond the limitation prescribed must be based upon the utility itself. The constitutional grant of power is clear and comprehensive and confers upon every municipality of the state the power not only to purchase and operate its public utilities but also to procure funds therefor by issuing its bonds payable by general taxation within constitutional and legislative limitations. Such municipality assumes responsibility consonant with the authority thus conferred, and is *132 not only permitted but required to determine for itself the portion of its taxing and debt incurring power which shall be used for any authorized municipal purpose.
For the reasons stated the writ should issue.

Writ allowed.

Nichols, C. J., Jones, Johnson, Wanamaker, Robinson and Merrell, JJ., concur.